UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**Shawn LeBlanc**                                           **Civil Action No. 06-0157**

versus                                                       **Judge Tucker L. Melançon**

**John E. Potter, Postmaster**                              **Magistrate Judge C. Michael Hill**

**MEMORANDUM RULING**

Before the Court is an unopposed[1] Motion for Summary Judgment and Memorandum in Support [Rec. Doc. 21] filed by defendant, John E. Potter, Postmaster General of the United States, to dismiss plaintiff's complaint in its entirety. For the reasons that follow, the Motion will be GRANTED.

**I. BACKGROUND**

On or about April 18, 1995, plaintiff was hired by the United States Postal Service, as a city carrier at the Energy Center Station in Lafayette, Louisiana. Plaintiff claims that he suffers from certain physical and mental impairments, and is a person with a disability as defined by federal statutes. Specifically, plaintiff claims that he has anatomical loss

---

[1] The certificate of service included within defendant's Motion for Summary Judgment indicates that the Motion, along with defendant's Memorandum in Support, Statement of Material Facts, and proposed order, were served on plaintiff *via* U.S. Mail on September 29, 2006, and filed electronically with the Clerk of Court using the CM/ECF system. Pursuant to L.R. 7.5W and Fed.R.Civ.Proc.5 and 6, the deadline for filing any opposition to defendant's Motion was October 17, 2006.

1

affecting his neurological, musculoskeletal, reproductive, digestive, genito-urinary and endocrine systems, among other physical injuries. He also claims to have anxiety, migraine headaches and attention deficit problems.

On September 6, 2003, plaintiff engaged in a confrontation with his supervisor, Natasha Narcisse, regarding the use of unauthorized overtime to complete his route and the fact that he deviated from his route. (*Defendant's Memorandum,* p. 1). When Narcisse ordered LeBlanc to report to her office to discuss the matter, he instead clocked out and left the building. (*Id.*). At that point, Narcisse and another supervisor, Kelvin Wilridge, followed LeBlanc outside and requested that he return to the building to discuss the problem. Plaintiff refused, stating that he had already punched out, but then attempted to re-enter the building while yelling and cursing at Narcisse. Narcisse shut the door to prevent LeBlanc's re-entry and told LeBlanc that she was going to call 911 for assistance. (*Id.*).

As a result of the incident, on or about September 7, 2003, LeBlanc was placed in an off-duty, non-pay status after an investigation conducted by the Manager of Customer Service, Ruby Malone (*Defendant's Memorandum,* p.2). Based on LeBlanc's conduct, Malone referred him for a Fitness for Duty Examination ("FFD") with Dr. Larry Benoit, Ph.D. clinical psychologist. The emergency placement of off-duty, non pay status was to run from September 21, 2003 until the FED evaluation. (*Id.*).

On October 7, 2003, LeBlanc was evaluated by Dr. Benoit, who diagnosed

LeBlanc with "delusional disorder, persecutory type," and recommended that LeBlanc remain on medical leave until he could be re-evaluated in approximately six weeks. (*Id.*). On December 17, 2003, Dr. Benoit conducted a follow-up examination and submitted his findings to Dr. Anthony J. Bouligny, the associate area medical director for the Louisiana District Medical Unit. (*Id.* at 3). At that time, Dr. Benoit found that LeBlanc was ready to return to work, but cautioned that careful attention should be given to plaintiff's workload and the amount of stress that he was required to tolerate. (*Id.*). On December 26, 2003, Dr. Bouligny, relying on Dr. Benoit's report, completed a Medical Assessment ("MA") form concerning LeBlanc. Dr. Bouligny noted LeBlanc as being "Moderate Risk/Restriction"and affirmed Dr. Benoit's concerns and recommendations regarding plaintiff's work load and stress levels. (*Id.*).

On January 9, 2004. Malone wrote a letter to LeBlanc after being unable to contact him by telephone on January 7 and January 9, 2004, regarding scheduling an appointment to discuss his requested accommodation and return to work. *(Id.)*. LeBlanc replied to Malone indicating that he was ready to return to work. He also enclosed a copy of the MA form and as well as a letter from his personal physician, Dr. John S. Thibodeaux - both of which stated that LeBlanc could return to work and had no physical limitations. (*Id.* at 5). LeBlanc also stated that he would resume duties in accordance with Dr. Bouligny's medical assessment and suggested job modifications, but further demanded that the Postal Service needed to reduce his workload and change his route. *(Id.)*. On January 15, 2004,

Malone sent another letter to LeBlanc instructing him to report to work on January 17, 2004. LeBlanc reported to work, but did not stay because his immediate supervisor, Kelvin Wilridge, informed him that no modifications had been made to his route because the medical documentation did not recommend any specific physical modifications. (*Id.*).

On January 21, 2004, Malone wrote to LeBlanc, informing him that his absence on January 17, 2004 violated the Postal Service's attendance requirements. (*Id.*). She also asked that LeBlanc produce satisfactory evidence explaining his failure to report to work and placed him in leave without pay status. By letter dated January 22, 2004, LeBlanc informed Malone that he had reported to work on January 17, 2004, but left because no job modifications had been made to his route according to Dr. Bouligny's recommendations. (*Id.*).

On January 28, 2004, Malone wrote LeBlanc again and directed him to return to duty after he received the letter. On February 6, 2004, LeBlanc wrote to Malone and provided her with a letter dated February 4, 2004, from his physician, Dr. Thibodeaux. Dr. Thibodeaux's letter indicated that he agreed with the assessments of Drs. Benoit and Bouligny as to LeBlanc's work load and stress levels. (*Id.*). Dr. Thibodeaux also agreed with Dr. Bouligny that LeBlanc was ready and willing to resume work "with careful attention to his stress and work hours, not to exceed eight hours a day and a work load that can be managed in eight hours." He further noted that LeBlanc had "no physical limitations at this time." Citing Dr. Thibodeaux's letter, LeBlanc informed Malone that

his "workload must be reduced." (*Id.*).

On February 17, 2004, Malone again wrote LeBlanc that he should report to work following receipt of her letter. (*Id.*).She warned him that he would be considered absent without leave (AWOL) unless he provided medical documentation supporting his inability to perform his job duties. LeBlanc did not return to work after receiving this letter. On March 18, 2004, Malone sent a letter to LeBlanc instructing him to report for an investigative interview on March 24, 2004. (*Id.*). LeBlanc informed the agency that he would not attend the interview. On April 13, 2004, Malone issued a notice of proposed removal from employment for extended absence. After requesting an extension of time to respond to the notice, on May 13, 2004, LeBlanc provided the Postmaster, Troy Southerland, with copies of the documents which were part of his FFD and no further explanation. On June 23, 2004, Southerland issued his decision to remove LeBlanc from employment. *(Id.)*.

On July 26, 2004, LeBlanc filed a mixed case appeal[2] with the Merit Systems Protection Board, alleging that he was discriminated against on the grounds of disability (chronic esophagitis) and reprisal (prior EEO activity) when he was removed. (*Id.* at 6). The Administrative Judge for the MSPB dismissed the matter without prejudice on

---

[2] A "mixed case" appeal denotes a situation in which a plaintiff claims that an appealable agency action was based in whole or in part on discrimination. *Casimier v. U.S. Postal Service,* 142 Fed.Appx. 201, 204 (5th Cir. 2005); *Blake v. Dep't of Air Force,* 794 F.2d 170, 172 n.1 (5th Cir. 1986).

5

October 4, 2004, to allow LeBlanc to file for disability retirement. The MSPB received LeBlanc's re-filed appeal on November 22, 2004. After a hearing, the Administrative Judge concluded that LeBlanc did not establish his claim of discrimination. The MSPB denied LeBlanc's petition for review. (*Id.*).

On October 19, 2005, LeBlanc filed a petition with the EEOC requesting review of the MSPB's final order. On December 20, 2005, the EEOC issued a decision agreeing with the MSPB's findings of no discrimination. (*Id.*). On January 27, 2006, LeBlanc filed the instant suit for judicial review with this Court.[3]

Plaintiff's complaint alleges that he was discriminated against on the basis of his disability during his employment with the United States Postal Service in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.* ("the Rehabilitation Act")[4] and Title

---

[3] Although the district court generally does not have jurisdiction to review final decisions of Merit Systems Review Board, it does has jurisdiction where aggrieved employee asserts "mixed claims," that is, the claim is based at least in part on a federal discrimination statutes. 5 U.S.C.A. § 7702-7703; *Aldrup v. Caldera,* 274 F.3d 282 (5th Cir. 2001); *Wiggins v. U.S. Postal Serv.,* 653 F.2d 219, 221 (5th Cir.1981).

[4] The Rehabilitation Act prohibits discrimination on the basis of disability in programs conducted by federal departments, agencies, and instrumentalities, including the U.S. Postal Service. 29 U.S.C. § 791(b). When a claimant relies on the Rehabilitation Act, he can seek review of the agency's decision by filing in accordance with Title VII. *Gomez v. Department of the Air Force*, 869 F.2d 852, 855 (5th Cir. 1989).

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII")[5] (*Id.* at 7, *see also Plaintiff's Complaint* and *Response*).[6] Specifically, LeBlanc contends that the U.S. Postal Service refused to change his delivery route to allow him to complete his work in an eight-hour day as recommended by his physician, and this subsequently led to his termination. (*Plaintiff's Complaint*).

The defendant posits that the ADA does not apply to the U.S. Postal Service, thus plaintiff's claim should be construed as a claim under the Rehabilitation Act of 1973, 29 U.S.C. §791 *et. seq.,* which provides a cause of action for all claims by employees of federally financed agencies for discrimination based on a handicap or disability. (*Defendant's Motion,* p.1). Furthermore, defendant moves this court to dismiss plaintiff's complaint in its entirety, contending that plaintiff cannot establish the essential elements of his stated claims. (*Id.*).

---

[5] 29 U.S.C.A. § 794a(a)(1) states that the "remedies, procedures, and rights" in Title VII of the Civil Rights Act of 1964 "shall be available" to any federal employee complaining of discrimination on the basis of disability/handicapp.

[6] Plaintiff appears as a pro se litigant. His Motion for Appointment of Counsel [Rec. Doc. 2] was denied after United States Magistrate Judge C. Michael Hill conducted a careful analysis and application of the three factors for evaluating applications for appointment of counsel in Title VII cases set out by the Fifth Circuit in *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309-1310 (5th Cir.1977) and *Neal v. IAM Local Lodge 2386*, 722F.2d 247, 250 (5th Cir.1984): (1) the efforts taken by the complainant to obtain counsel on his own; (2) the complainant's financial ability to retain counsel; and (3) the merits of the complainant's claims of discrimination. [Rec. Doc.25]. Noting that LeBlanc met the first two factors, Judge Hill determined that plaintiff had not alleged sufficient facts to establish a claim under the ADA or for disparate treatment, thus the "merits of plaintiff's claim weighs against the appointment of counsel." (*Id.*).

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[7] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine

---

[7] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. LAW & ANALYSIS

As an initial matter, the fact that LeBlanc has not filed an opposition to defendant's Motion for Summary Judgment does not necessarily signify that defendant should prevail on the merits. "A motion for summary judgment cannot be granted simply because there

9

is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). However, plaintiff's failure to file an opposition to defendant's Motion for Summary Judgment and corresponding statement of contested material facts requires the Court to deem defendant's statement of uncontested material facts admitted for purposes of the instant motion. *See* Local Rule 56.2W.

> **A.** **Plaintiff's ADA/Rehabilitation Act claim must fail because plaintiff cannot establish a prima facie case of disability.**

Because the Americans with Disabilities Act "(ADA") does not apply to the Postal Service as a federal agency, the Court will construe plaintiff's claim as if brought under the Rehabilitation Act of 1973 ("Rehabilitation Act" or "the Act"), which likewise prohibits discrimination by employers against any qualified individual with a disability and embodies the same standards as the ADA. Under the Rehabilitation Act, to establish discrimination based on disability, LeBlanc must demonstrate that: (1) he is an "individual with a disability;" (2) he was "otherwise qualified" to do the job in question; (3) he worked for a federal agency or a "program or activity receiving Federal financial assistance;" and (4) he was denied the benefits of his employment or was discriminated

against "solely by reason of her or his disability."[8] *Hileman v. City of Dallas,* 115 F.3d 352, 353 (5th Cir.1997) (quoting 29 U.S.C. § 794(a)); *see also Calderon v. Potter,* 113 Fed.Appx. 586, 590-591 (5th Cir. 2004); *Lollar v. Baker,* 196 F.3d 603. 606 (5th Cir. 1999); *Chandler v. City of Dallas,* 3 F.3d 1385, 1390 (5th Cir. 1993). Defendant argues that he is entitled to summary judgment as a matter of law because plaintiff cannot establish the essential elements of a discrimination case under the Rehabilitation Act, with respect to which he would have the burden of proof at trial. In considering the facts in the light most favorable to plaintiff, the Court finds that plaintiff lacks sufficient evidence to prove that he is individual with a disability as defined by statute or that he was discriminated against on the basis of that disability.

### *1. Plaintiff is not disabled or a "qualified individual with a disability."*

Plaintiff's Rehabilitation Act claim fails as a matter of law because he has not established that he has a disability that qualifies him as an "individual with a disability" that would make him protected under the Act. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998) (citing *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th

---

[8] "The standards used for determining whether the Rehabilitation Act has been violated in an employment discrimination suit are the same as the standards for determining if the Americans with Disabilities Act ("ADA") has been violated in an employment discrimination suit. 29 U.S.C. § 791(g) (2000). Under the ADA, an individual has a "disability" if he: (A) has a physical or mental impairment that substantially limits one or more of his major life activities; (B) has a record of such an impairment; or (C) has been regarded as having such an impairment." *Hileman v. City of Dallas,* 115 F.3d 352, 353 (5th Cir.1997)(*citing* 42 U.S.C. § 12102(2) (2000)); *see also Rogers v. Int'l Marine Terminals, Inc.* 87 F.3d 755, 758 (5th Cir.1996).

Cir. 1996), *cert. denied,* 519 U.S. 1093 (1997)). The term "qualified individual with a disability" encompasses the following: (1) a mental or physical impairment that substantially limits one or more major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 29 U.S.C. § 706(8)(B). According to EEOC regulations, "major life activities" are things such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Calderon v. Potter,* 113 Fed.Appx. 586, 590-591(5th Cir. 2004) *(citing McInnis v. Alamo Cmty. Coll. Dist.,* 207 F.3d 276, 280 (5th Cir.2000) (quoting 29 C.F.R. § 1630.2)). With respect to working, the U.S. Supreme Court held that the claimant is required to "show an inability to work in a 'broad range of jobs'." *Toyota Motor Mfg. v. Williams,* 534 U.S. 184 (2002)(*quoting Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999)). A person is regarded as being significantly restricted in a major life activity when he: "(1) has an impairment that is not substantially limiting but which his employer considers to be substantially limiting; (2) has an impairment which is substantially limiting only because of others' attitudes; or (3) has no impairment but is perceived by his employer as having a substantially limiting impairment." *Calderon,* 113 Fed.Appx. at 591; *Bridges v. City of Bossier,* 92 F.3d 329, 332 (citing *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727-28 n. 19 (5th Cir.1995)).

In this case, the record does not establish that claimant has a "disability" as defined by the ADA. There are no medical records evidencing that plaintiff suffers either

a physical or mental condition that would "substantially limits a major life activity." The latest record from his treating physician, Dr. Thibodeaux, indicates that LeBlanc was "ready and willing to resume his regular duties" and had "no physical limitations at this time (*Defendant's Exhibit* 15)." Furthermore, while LeBlanc has not alleged a mental disability, the record reflects that he was diagnosed by Dr. Benoit with "delusional disorder, persecutory type" in October, 2003. However, at the re-evaluation on December 17, 2003, Dr. Benoit found that LeBlanc was ready to return to work. Dr. Benoit indicated, and Drs. Bouligry and Thibodeaux concurred, that although the employer should pay attention to LeBlanc's work load and stress level, LeBlanc's mental impairment did not substantially limit any of his major life activities, or specifically, his ability to perform his job duties. (*Defendant's Memorandum,* pp. 5-6)

LeBlanc simply has not produced any evidence indicating that any physical or mental condition that he suffers either prevents or substantially impairs his ability to engage in a major life activity or "perform the variety of tasks central to most persons daily lives" or "perform a broad range of jobs." *Toyota Motor Mfg. v. Williams,* 534 U.S. 184 (2002). As the record does not demonstrate that plaintiff is entitled to protection under the Rehabilitation Act as a "qualified individual with a disability," plaintiff has not met the threshold requirement for a Rehabilitation Act claim, thus summary judgment is proper.

***2. Plaintiff has not established that the Postal Service discriminated against him on the basis of some actual or perceived disability.***

The record shows that the Postal Service made several attempts to return plaintiff to work and was willing to make reasonable accommodations for plaintiff's medical restrictions upon documented medical recommendations. (*Defendant's Memorandum,* p. 5). Plaintiff did not provide any medical documentation specifying a qualifying disability and suggesting reasonable accommodation that would allow him to perform the essential functions of his job position, even though such evidence was repeatedly requested by the Postal Service. *See, Taylor v. Principal Fin. Group,* 93 F.3d 155, 156 (5th Cir. 1996). The three treating physicians, Drs. Benoit, Thibodeaux and Bouligny all agreed that plaintiff was ready and able to return to work, and the only "suggested accommodation" was a caution regarding his work load - to keep his work hours at eight per day - and the "amount of stress he is required to tolerate." (*Id.* at 4-5). Considering plaintiff's diagnosis and the medical documentation provided to the Postal Service, his demand that his route be adjusted was not a necessary or reasonable accommodation. Plaintiff cannot establish that the Postal Service failed to accommodate his medical restrictions or discriminated against him on the basis of his disability so summary judgment will be granted.

**B.      Plaintiff's Title VII claim must fail because defendant had legitimate non-discriminatory reasons for its decision and actions regarding plaintiff's employment.**

In considering whether plaintiff was discriminated against on the basis of his

disability and in reprisal the Court applies the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)*,* burden-shifting framework set out by the United States Supreme Court. In order to establish his *prima facie* case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) others similarly situated were treated more favorably. *Ryburn v. Potter*, 155 Fed.Appx. 102, 107 (5th Cir. 2005). Assuming the plaintiff is able to establish his *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action. *Aldrup v. Caldera,* 274 F.3d 282, 286 (5th Cir.2001)(citing *Green*, 411 U.S. at 302). If the defendant makes the required showing, the burden returns to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for the real, discriminatory reason. *Id*.

In this case, LeBlanc has failed to produce evidence supporting the fourth element of his retaliation claim: that others similarly situated were treated more favorably. *See Wyvill v. United Companies Life Ins. Co.,* 212 F.3d 296, 304 (5th Cir. 2000) (requiring "nearly identical circumstances" of employment to support a claim of disparate treatment). LeBlanc failed to identify anyone outside of his protected group who had engaged in the same conduct and was treated differently by the Post Office.

What's more, *assuming arguendo* that plaintiff had provided sufficient evidence to

support his allegations of discrimination and retaliation in deciding to terminate plaintiff, plaintiff's claim would still fail because defendant can establish legitimate, non-discretionary reasons for its action. As previously stated, the Postal Service made several attempts to return plaintiff to work and was willing to make reasonable accommodations if plaintiff provided medical documentation identifying his disability and stating the suggested necessary accommodations. Plaintiff was warned several times that his failure to return to work could result in discipline, including removal. In spite of the warnings, LeBlanc refused discuss or attend any interviews regarding his failure to return to work. (*Defendant's Memorandum,* p. 5). Furthermore, he failed to properly respond to Notice of Proposed Removal which was issued on April 13, 2004 for his extended absence from his duties. (*Id.*). Considering plaintiff's course of conduct, defendant's decision to remove plaintiff was reasonable under the circumstances, and did not hint of discriminatory pretext. As it were, plaintiff has not offered evidence that the Postal Service's reasons for terminating him were pretextual; his naked belief that he was discriminated against is insufficient to "demonstrate that the employer's articulated reason for the employment action was a pretext for the real, discriminatory reason." *Green*, 411 U.S. at 302; *Aldrup,* 274 F.3d at 286.

The Court agrees with the ruling of the Merit Systems Protection Board, issued October 21, 2005, and the affirming of that final decision by the Equal Employment Opportunity Commission on December 20, 2005, that the Postal Service had a legitimate,

non-discretionary reason for terminating LeBlanc after his extended absence from duty, that the penalty of removal was reasonable under the circumstances, and that LeBlanc cannot prove his affirmative defense of discrimination or that the Postal Services' action was based on disability discrimination or reprisal.

## IV. Conclusion

Based on the record before the Court, the Court holds that there are no specific facts showing the existence of a genuine issue, therefore, defendant's motion for summary judgment will be GRANTED and plaintiff's claims against defendant will be DISMISSED in its entirety.